**UNITED STATES DISTRICT COURT
DISTRICT OF NEVADA**

| | |
|---|---|
| JULIE J. ANDERSON,             ) | 3:09-cv-00740-LRH (RAM) |
| Plaintiff,             ) | |
|                 ) | **REPORT AND RECOMMENDATION** |
| vs.             ) | **OF U.S. MAGISTRATE JUDGE** |
|                 ) | |
| MICHAEL J. ASTRUE,             ) | |
| Commissioner of Social Security,             ) | |
|                 ) | |
| Defendant.             ) | |

This Report and Recommendation is made to the Honorable Larry R. Hicks, United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and the Local Rules of Practice, LR IB 1-4. Before the court is Plaintiff Julie J. Anderson's (Plaintiff) Motion for Remand. (Doc. #10.)[1] Defendant Commissioner opposed the motion and filed a Cross-Motion for Summary Judgment to affirm the Commissioner's final decision. (Doc. #13-14.) Plaintiff replied. (Doc. #15.) After a thorough review, the court recommends that Plaintiff's motion be denied, and Defendant's motion be granted.

**I. FACTUAL AND PROCEDURAL BACKGROUND**

At the time of the Commissioner's final decision, Plaintiff was a forty-three-year-old woman who did not complete high school but obtained a GED. (Tr. 24-25.) Plaintiff worked as a cashier for approximately one year from July 2004 to July 2005. (*Id.* at 25-26, 76.) She

---

[1] Refers to court's docket number.

subsequently worked as a driver for Meals on Wheels from July 2005 until January 2006. (*Id.* at 26, 76.)

In May 2006, Plaintiff filed an application for Disability Insurance Benefits (DIB), alleging that she became disabled on October 7, 2003 due to hepatitis C, bipolar disorder, depression, post-traumatic stress disorder (PTSD), asthma, headaches, fibromyalgia, thyroid problems, anxiety and fatigue. (Tr. 45, 50.) The Commissioner denied Plaintiff's application initially and upon reconsideration. (*Id.* at 45-48, 50-52.) Plaintiff requested a hearing to challenge the Commissioner's determination. (*Id.* at 53.)

On February 10, 2009, Plaintiff, represented by counsel, appeared and testified at the hearing before the Administrative Law Judge (ALJ). (Tr. 22-40.) The ALJ followed the five-step procedure for evaluating disability claims, set forth in 20 C.F.R. § 404.1520, and issued a written decision on March 18, 2009, finding Plaintiff "not disabled" as defined in the Social Security Act and denying the claim for DIB. (*Id.* 10-18.) Plaintiff appealed the decision, and the Appeals Council denied review. (*Id.* at 1-3.) Thus, the ALJ's decision became the final decision of the Commissioner. (*Id.*)

Plaintiff now appeals the decision to the district court, in which she argues: (1) the ALJ erred by failing to take vocational expert testimony; (2) the ALJ's residual functional capacity (RFC) assessment was incomplete; (3) the ALJ's credibility analysis was legally improper; and (4) the ALJ's step 3 analysis was flawed. (Pl.'s Mot. for Remand (Doc. # 10).)

## II.  STANDARD OF REVIEW

The court must affirm the ALJ's determination if it is based on proper legal standards and the findings are supported by substantial evidence in the record. *Stout v. Comm'r Soc. Sec. Admin.*, 454 F.3d 1050, 1052 (9th Cir. 2006). "Substantial evidence is more than a mere scintilla but less than a preponderance." *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005) (internal quotation marks and citation omitted). "It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229

(1938)). To determine whether substantial evidence exists, the court must look at the record as a whole, considering both evidence that supports and undermines the ALJ's decision. *Orteza v. Shalala*, 50 F. 3d 748, 749 (9th Cir. 1995) (citation omitted). "However, if evidence is susceptible of more than one rational interpretation, the decision of the ALJ must be upheld." *Id.* at 749 (citation omitted). The ALJ alone is responsible for determining credibility and for resolving ambiguities. *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999).

The initial burden of proof rests upon the claimant to establish disability. 20 C.F.R. § 404.1512(a); *Howard v. Heckler*, 782 F.2d 1484, 1486 (9th Cir. 1986) (citations omitted). To meet this burden, a plaintiff must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected ... to last for a continuous period of not less than 12 months ...." 42 U.S.C. § 423 (d)(1)(A).

## III. DISCUSSION

### A. SEQUENTIAL PROCESS AND ALJ FINDING

The Commissioner has established a five-step sequential process for determining whether a person is disabled. *Bowen v. Yuckert*, 482 U.S. 137, 140-41 (1987); *see also* 20 C.F.R. §§ 404.1520, 416.920. If at any step the Social Security Administration (SSA) can make a finding of disability or nondisability, a determination will be made and the SSA will not further review the claim. *Barnhart v. Thomas*, 540 U.S. 20, 24 (2003); *see also* 20 C.F.R. §§404.1520(a)(4), 416.920(a)(4).

In the first step, the Commissioner determines whether the claimant is engaged in "substantially gainful activity"; if so, a finding of nondisability is made and the claim is denied. *Yuckert*, 482 U.S. at 140; 20 C.F.R. §§ 404.1520(b), 416.920(a)(4)(i). If the claimant is not engaged in substantially gainful activity, the Commissioner proceeds to step two. 20 C.F.R. §§ 404.1520(a)(4)(i), (ii), 416.920(a)(4)(i), (ii).

///

The second step requires the Commissioner to determine whether the claimant's impairment or combinations of impairments are "severe." *Yuckert*, 482 U.S. at 140-41; 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An impairment is severe if it significantly limits the claimant's physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1520(c), 416.920(c). If a claimant's impairment is so slight that it causes no more than minimal functional limitations, the Commissioner will find that the claimant is not disabled. 20 C.F.R. §§ 404.1520, 416.920. If, however, the Commissioner finds that the claimant's impairment is severe, the Commissioner proceeds to step three. *Id.*

In the third step, the Commissioner determines whether the impairment is equivalent to one of a number of specific impairments listed in 20 C.F.R. pt. 404, subpt. P, app.1 (Listed Impairments). 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). The Commissioner presumes the Listed Impairments are severe enough to preclude any gainful activity. 20 C.F.R. § 416.925(a). If the claimant's impairment meets or equals one of the Listed Impairments and is of sufficient duration, the claimant is conclusively presumed disabled. 20 C.F.R. §§ 404.1520(d), 416.920(d). If the claimant's impairment is severe, but does not meet or equal one of the Listed Impairments, the Commissioner proceeds to step four. *Yuckert*, 482 U.S. at 141.

In step four, the Commissioner determines whether the claimant can still perform "past relevant work." 20 C.F.R. §§ 404.1520(e), 416.920(e). If the claimant can still do past relevant work, then he or she is not disabled for purposes of the Act. 20 C.F.R. §§ 404.1520(f), 416.920(f). If, however, the claimant cannot perform past relevant work, the burden shifts to the Commissioner, *Yuckert*, 482 U.S. at 144, to establish, in step five, that the claimant can perform work available in the national economy. *Yuckert*, 482 U.S. at 141-42; *see also* 20 C.F.R. §§ 404.1520(e), (f), 416.920(e), (f). Application of steps four and five requires the Commissioner to review the claimant's residual functional capacity and the physical and mental demands of the work he or she did in the past. 20 C.F.R. §§ 404.1520(f),(g), 416.920(f), (g). "Residual functional capacity" (RFC) is what the claimant

4

1  can still do despite his or her limitations. 20 C.F.R. § 404.1545. If the claimant cannot do the
2  work he or she did in the past, the Commissioner must consider the claimant's RFC, age,
3  education, and past work experience to determine whether the claimant can do other work.
4  *Yuckert*, 482 U.S. at 141-42. If the Commissioner establishes that the claimant can do other
5  work which exists in the national economy, then he or she is not disabled. 20 C.F.R. §
6  404.1566.

7  In the present case, the ALJ applied the five-step sequential evaluation process and
8  found, at step one, that Plaintiff had not engaged in substantial gainful activity since her
9  application date. (Tr. 12.) At step two, the ALJ found that it was established that Plaintiff
10 is severely impaired by hepatitis C, bipolar disorder, depression, PTSD, asthma, fibromyalgia,
11 and thyroid problems, which cause significant limitation in Plaintiff's ability to perform basic
12 work activities. (*Id.* at 12.) At step three, the ALJ found that Plaintiff did not have an
13 impairment or combination of impairments that met or medically equaled one of the Listed
14 Impairments. (*Id.* at 12-13) At step four, the ALJ determined that Plaintiff had the RFC to
15 perform the full range of unskilled light work, but was unable to return to her past relevant
16 work as a cashier and driver. (*Id.* at 17.) At step five, relying on the Medical-Vocational
17 Guidelines (Grids), the ALJ determined Plaintiff was not disabled. (Tr. 18-25.) In
18 conclusion, the ALJ determined that a finding of "not disabled" was directed by Grids Rule
19 202.21. (*Id.*)

20 **B.    FAILURE TO TAKE VOCATIONAL EXPERT TESTIMONY**

21 Plaintiff asserts the ALJ erred by failing to take vocational expert testimony regarding
22 the effect of Plaintiff's non-exertional limitations on the occupational base at step 5.
23 (Doc. #10 9.) Plaintiff argues that the Grids cannot be used when there are non-exertional
24 limitations. (*Id.* at 10.) Defendant contends that in the context of light work, occasional
25 postural limitations do not significantly limit the range of available work and thus do not
26 prevent reliance on the Grids. (Doc. # 13 5.) With respect to Plaintiff's environmental

5

1  limitations, Defendants argue that Plaintiff only has to avoid concentrated exposure to
2  extreme temperatures, humidity, wetness or hazards. (*Id.* at 6.)

3  As set forth above, a claimant must prove that he or she is not engaged in substantial
4  gainful activity, that the disability is severe, and that the impairment meets or equals one of
5  the Listed Impairments. *See* 20 C.F.R. §§ 404.1520, 416.920. If the impairment does not
6  meet or equal one of the Listed Impairments, a claimant can still establish disability if he or
7  she can prove at step four that he or she cannot perform past relevant work. *Id.* If this is
8  established, the burden shifts to the Commissioner, at step five, to demonstrate "the claimant
9  can perform a significant number of other jobs in the national economy." *Id.*

10  A step five determination is made on the basis of four factors: the claimant's RFC, age,
11  education and work experience. *Hoopai v. Astrue*, 499 F.3d 1071, 1075 (9th Cir. 2007). "To
12  assist in the step-five determination, the Social Security Administration established [the
13  Grids], which consist of a matrix of [the four factors] and set forth rules that identify whether
14  jobs requiring a specific combination of these factors exist in significant numbers in the
15  national economy." *Id.* (citation omitted); *see also* 20 C.F.R. pt. 404, subpt. P, app. 2,
16  §200.00(b). "When the grids match the claimant's qualifications, the guidelines direct a
17  conclusion as to whether work exists that the claimant could perform." *Hoopai*, 499 F.3d at
18  1075 (citation omitted). "When the grids do not match the claimant's qualifications, the ALJ
19  can either (1) use the grids as a framework and make a determination of what work exists that
20  the claimant can perform...or (2) rely on a vocational expert when the claimant has significant
21  non-exertional limitations. *Id.* (citations omitted); *see also* 20 C.F.R. pt. 404, subpt. P, app.
22  2. The Grids can be used if there are both exertional and non-exertional limitations present.
23  *Hoopai*, 499 F.3d at 1075; *see also Tackett v. Apfel*, 180 F.3d 1094, 1102 (9th Cir. 1999)
24  ("the fact that a non-exertional limitation is alleged does not automatically preclude

6

application of the grids.").[2] The Grids are inapplicable and a vocational expert is required only "[w]hen a claimant's non-exertional limitations are 'sufficiently severe' so as to significantly limit the range of work permitted by the claimant's exertional limitations." *Hoopai,* 499 F3d at 1075 (citation omitted).

The fact that a non-exertional mental impairment is found to be "severe" at the second step does not render it "sufficiently severe" to require the use of a vocational expert. *Hoopai*, 499 F.3d at 1076. In fact, the non-exertional limitation must be more than "severe" at step two to require the use of a vocational expert. *Id.* This is because the step two determination is "merely a threshold determination of whether the claimant is able to perform his past work." *Id.*

Plaintiff's argument that the ALJ's reliance on the Grids was in error and that the ALJ was required to obtain testimony from a vocational expert lacks merit.

Here, as in *Hoopai*, Plaintiff asserts that she has significant non-exertional limitations, and therefore, the ALJ was required to seek the testimony of a vocational expert. *See Hoopai*, 499 F.3d at 1075. In *Hoopai*, the Ninth Circuit found that the claimant's depression was not a sufficiently severe non-exertional limitation requiring the assistance of a vocational expert. *Id.* at 1076. Hoopai had been diagnosed with moderately significant forms of depression and was only prescribed limited treatment, and it was determined that he had exaggerated symptoms. *Id.* A mental RFC revealed that Hoopai was not significantly limited in seventeen of twenty categories. *Id.* It was determined that he was moderately limited in his ability to maintain attention and concentration for extended periods, his ability to perform activities within a schedule, and his ability to complete a normal workday without interruption from psychologically-based symptoms. *Id.* The court found that his mild or moderate depression

---

[2] "A non-exertional impairment is an impairment 'that limits [the claimant's] ability to work without directly affecting his [ ] strength.'" *Bruton v. Massanari,* 268 F.3d 824, 828 (9th Cir. 2001) (citation omitted).

was not a sufficiently severe non-exertional limitation such that the assistance of a vocational expert was required. *Id.*

Here, a mental RFC revealed that Plaintiff was not significantly limited in eighteen out of twenty categories. (Tr. 174-175.) It was determined that Plaintiff was moderately limited in her ability to carry out detailed instructions and her ability to maintain attention and concentration for extended periods. (*Id.* at 174.) In a second mental RFC, it was determined that Plaintiff was not significantly limited in eighteen of twenty categories. (Tr. 228-230.) Plaintiff was deemed moderately limited in the ability to maintain attention and concentration for extended periods and in the ability to complete a normal work-day and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. (*Id.*) In *Hoopai*, the plaintiff was similarly found to have moderate limitations, and the court determined that such moderate limitations would not significantly limit plaintiff's ability such that vocational testimony was required. *Hoopai*, 499 F.3d at 1077.

Accordingly, the court finds the ALJ did not commit error in his use of the Grids as a framework in his determination.

**C.     RFC ASSESSMENT**

Plaintiff argues the ALJ erred by finding Plaintiff is capable of the full range of light exertional level work. (Doc. # 10 10.) Plaintiff asserts that limitations assessed by the state agency non-examining doctors were ignored by the ALJ. (*Id.*) Plaintiff argues that her moderate limitations should have been presented to a vocational expert. (*Id.*) Plaintiff also contends that so many moderate limitations in combination are likely to have a significant impact on the occupational base, such that the ALJ's finding at step 5 is unwarranted. (*Id.*) Defendant argues that the ALJ committed no error in relying on the Grids rather than vocational expert testimony. (Doc. # 13 8.)

The RFC is "what [Plaintiff] can still do despite [her] limitations." 20 C.F.R. §§ 404.1545(a), 416.945(a). RFC is comprised of a claimant's physical abilities, mental abilities,

8

and other impairments. *Id.* RFC is divided into four exertional categories: (1) sedentary; (2) light; (3) medium; and (4) heavy. 20 C.F.R. § 404.1567, 416.967. RFC is a medical assessment. 20 C.F.R. §§ 404.1545(a), 416.945(a).

In the Ninth Circuit, in determining RFC, an ALJ "must consider all relevant evidence in the record, including, *inter alia*, medical records, lay evidence, and 'the effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment.'" *Robbins v. Social Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006).

Here, the ALJ found that Plaintiff has the RFC to perform the full range of unskilled, light work as defined in 20 C.F.R. § 416.967(b). (Tr. 13.) This includes lifting no more twenty pounds occasionally and ten pounds frequently; standing and walking up to six hours in an eight hour day and sitting up to six hours in an eight hour day. (*Id.*) In addition, unskilled work involves little or no judgment to do simple duties that can be learned on the job in a short period of time. (*Id.*) Unskilled jobs ordinarily involve dealing primarily with objects, rather than with data or people. (*Id.*) Plaintiff could only occasionally climb ramps and stairs, and never climb ladders, rope or scaffolds. (*Id.*) She could occasionally kneel and crawl. (*Id.* at 13-14.) She should avoid concentrated exposure to extreme cold or heat, wetness, humidity and hazards. (*Id.* at 14.)

The ALJ noted Plaintiff alleged inability to work due to hepatitis C, bipolar disorder, depression, PTSD, asthma, headaches, fibromyalgia, and thyroid problems. (Tr. 14.) Plaintiff asserts that these impairments cause her to feel fatigued, achy, and cause problems focusing and remembering. (*Id.*) They also cause her to feel paranoia, obsessive compulsive, anxiety, emotional, and isolated. (*Id.*) She sleeps a lot, and due to her thyroid issues, she cannot concentrate and has gained weight. (*Id.*)

The ALJ noted Plaintiff's statements that she wakes up, gets her kids off to school, does light housework, makes meals, and sometimes goes to support meetings. (Tr. 14.) On bad days she may not leave the house, and takes naps. (*Id.*) She cares for her two sons and makes sure they keep upon their home work. (*Id.*) She does housework, laundry, and

9

grocery shopping. (*Id.*) She enjoys reading and watching television. (*Id.*) She attends church, and uses the computer and telephone. (*Id.*) She is unable to go on long walks or bicycle rides with her children, but states she is able to walk about a half mile at a slow pace. (*Id.*) She sometimes has a hard time remembering things. (*Id.*) She experiences fatigue she attributes to hepatitis C. (*Id.* at 15.) She has manic episodes two to three times per month. (*Id.*)

The ALJ reviewed Plaintiff's treatment notes from Health Access Washoe County Outreach Clinic and noted that Plaintiff experienced continued anxiety and paranoid thought content. (Tr. 15.) The ALJ also noted Plaintiff attended a consultive mental status examination on July 21, 2006, before Richard Lewis, Ph.D. (*Id.*) Plaintiff confirmed that she attends church, goes to support meetings, feeds her kids, does housework, goes to the park, and makes meals. (*Id.*) She also relayed to Dr. Lewis that she enjoys reading, and occasionally takes her children to the river. (*Id.*) Her global assessment function (GAF) score was 60. (*Id.*) Dr. Lewis opined Plaintiff's prognosis was fair, and found her to be a motivated woman. (*Id.*) While Dr. Lewis noted Plaintiff demonstrated difficulty with the serial 7's and serial 3's, he found her to be capable of understanding, remembering, and carrying instructions at all three rated levels. (*Id.*) She was also found capable of interacting appropriately with supervisors, co-workers, and the general public. (*Id.*)

Next, the ALJ noted that Plaintiff underwent a consultative internal medicine evaluation by Steven Gerson, D.O. (Tr. 15.) Plaintiff reported being tired with swelling of the joints. (*Id.*) She also reported a history of asthma and use of albuterol, but denied any chronic cough and denied seeing a pulmonologist. (*Id.*) Dr. Gerson opined that Plaintiff could perform light work, but due to her history of asthma placed environmental restrictions of no exposure to temperature extremes, chemicals or dust. Dr. Gerson did not believe Plaintiff appeared acutely toxic or clinically fatigued. (*Id.* at 16.)

10

1    The ALJ noted Plaintiff's treatment with Dr. Rasul and his observation in May 2007 that Plaintiff had difficulty with attention and concentration, but no disturbances of affect, interpersonal behavior, or thorough processes. (Tr. 16.)

The ALJ reviewed the records from Plaintiff's mental status examination by James Doornick, Ph.D. in August 2007. (Tr. 16.) Plaintiff reported that she gets her boys to school, takes care of her personal needs, cooks, and does housework, and attends church and support groups. (*Id*.) She uses a computer to check her bank account. (*Id*.) Dr. Doornick opined that Plaintiff could understand, remember and carry out simple, detailed and complex tasks, as well as interact with the public, supervisors, and co-workers. (*Id*.) She could sustain concentration and attention for simple and detailed tasks, but probably not complex tasks. (*Id*.) His prognosis was guarded to good. (*Id*.)

The ALJ also noted that Plaintiff was seen at Renown Regional Medical Center on July 29, 2008, reporting depression and suicidal thoughts after having a fight with her boyfriend. (Tr. 16.) She was seen for a follow-up on December 3, 2008 and reported no thoughts of suicide. (*Id*.)

The ALJ reviewed an August 28, 2007 mental RFC by Dr. Susan Kolter. Dr. Kolter found Plaintiff was not significantly limited in eighteen of twenty categories. (Tr. 228-220.) Dr. Kolter found Plaintiff was moderately limited in two categories: (1) her ability to maintain attention and concentration for extended periods, and (2) the ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. (*Id*.) Dr. Kolter found Plaintiff able to maintain attention and concentration for two-hour work periods to complete tasks at an acceptable pace. (*Id.* at 230.)

Plaintiff argues that the RFC assessment is incomplete because it does not take into account the two categories for which Dr. Kolter found Plaintiff was moderately limited and present them to a vocational expert. (Doc. # 10 10-11.) While Plaintiff refers to four categories of moderate limitations, two of these categories are from the Psychiatric Review

11

1  Technique Form (PRTF) completed by Dr. Kolter, where she stated that an RFC analysis was
2  necessary. (Tr. 214-227.) In the RFC analysis, she only found two categories of moderate
3  limitation. (Tr. 228-230.) In those categories, Dr. Kolter still found Plaintiff able to
4  maintain attention and concentration for two-hour work periods to complete tasks at an
5  acceptable pace. (Tr. 230.) As the court stated in its analysis above, Dr. Kolter's findings
6  of moderate limitations in two categories did not require the ALJ to obtain the testimony of
7  a vocational expert. This conclusion is consistent with the Ninth Circuit's similar finding in
8  *Hoopai*. The court finds that the ALJ properly considered all relevant evidence in the record
9  in determining Plaintiff's RFC.

10 **D.   CREDIBILITY ANALYSIS**

11  Plaintiff asserts that the ALJ erred in assessing Plaintiff's credibility. (Doc. # 10 11.)
12 Defendant contends the ALJ provided a valid basis for finding Plaintiff not fully credible,
13 supported by substantial evidence and by the law. (Doc. # 13 9-14.)

14  "[A] claimant's credibility becomes important at the stage where the ALJ is assessing
15 residual functional capacity, because the claimant's subjective statements may tell of greater
16 limitations than can medical evidence alone." *Tonapetyan v. Halter*, 242 F.3d 1144, 1147
17 (9th Cir. 2001) (citing SSR 96-7p (1996)). Thus, a claimant's credibility is often crucial to
18 a finding of disability. The ALJ is responsible for determining credibility. *Meanel v. Apfel*,
19 172 F.3d 1111, 1113 (9th Cir. 1999).

20  In general, when deciding to accept or reject a claimant's subjective symptom
21 testimony, an ALJ must perform two stages of analysis: an analysis under *Cotton v. Bowen*,
22 799 F.2d 1403 (9th Cir. 1986) (the "*Cotton* test"), and an analysis of the credibility of the
23 claimant's testimony regarding the severity of his or her symptoms. *Smolen v. Chater*, 80
24 F.3d 1273, 1281 (9th Cir. 1996); *see also* 20 C.F.R. § 404.1529 (adopting two-part test). "If
25 the claimant produces evidence to meet the *Cotton* test and there is no evidence of
26 malingering, the ALJ can reject the claimant's testimony about the severity of his or her

12

symptoms only by offering specific, clear, and convincing reasons for doing so." *Smolen*, 80 F.3d at 1281 (citation omitted).

Under the *Cotton* test, a claimant who alleges disability based on subjective symptoms "must produce objective evidence of an underlying impairment 'which could reasonably be expected to produce pain or other symptoms alleged.'" *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc) (citing 42 U.S.C. § 423(d)(5)(A)). This test "imposes only two requirements on the claimant: (1) [he or] she must produce objective medical evidence of an impairment or impairments; and (2) [he or] she must show that the impairment or combination of impairments *could reasonably be expected to* (not that it did in fact) produce some degree of symptom." *Smolen*, 80 F.3d at 1282 (emphasis original); *see also* 20 C.F.R. § 404.1529(a)-(b).

An ALJ's credibility findings are entitled to deference if they are supported by substantial evidence and are "sufficiently specific to allow a reviewing court to conclude the adjudicator rejected the claimant's testimony on permissible grounds and did not 'arbitrarily discredit a claimant's [symptom] testimony.'" *Bunnell,* 947 F.2d at 345 (quoting *Elam v. Railroad Retirement Bd.*, 921 F.2d 1210, 1215 (11th Cir. 1991)). When analyzing credibility, an ALJ may properly consider medical evidence in the analysis. *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001) ("[w]hile subjective pain testimony cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence, the medical evidence is still a relevant factor in determining the severity of the claimant's pain and its disabling effects."); *see also Batson v. Comm'r of Soc. Sec.*, 359 F.3d 1190, 1196 (9th Cir. 2004) (holding ALJ properly determined credibility where claimant's testimony was contradictory to and unsupported by objective medical evidence). An ALJ may consider various factors in assessing the credibility of the allegedly disabling subjective symptoms, including: daily activities; the location, duration, frequency, and intensity of pain or other symptoms; precipitating and aggravating factors; the type, dosage, effectiveness, and side effects of any medication taken to alleviate symptoms; treatment, other than medication,

13

received for relief of symptoms; any measures a claimant has used to relieve symptoms; and other factors concerning functional limitations and restrictions due to symptoms. 20 C.F.R. § 404.1529(c)(3)(i)-(vii).

Here, there is no dispute Plaintiff produced objective evidence in the record of impairments which could have given rise to Plaintiff's symptoms and functional limitations. However, the ALJ found that Plaintiff's statements concerning the intensity, persistence, and limiting effects of these symptoms are not credible, to the extent they are inconsistent with the RFC assessment. (Tr. 15.) Because there is no evidence of malingering, the ALJ was required to give clear and convincing reasons in support of the adverse credibility finding.

The ALJ found that Plaintiff has the RFC to perform the full range of unskilled, light work. (Tr. 13-14.) The ALJ found Plaintiff's testimony establishing greater physical limitations than those included in the RFC were not entirely credible. (*Id.* at 15.) The ALJ found that despite her complaints of pain and shortness of breath, as noted by Dr. Gerson, Plaintiff did not see a rheumatologist, orthopedist, or pulmonologist. (*Id.* at 16.) In addition, the ALJ noted that Plaintiff did not seek treatment from a physical therapist. (*Id.* at 17.) The ALJ found Plaintiff's activities of daily living to be only mildly restricting, and that she continues to do light household chores, cares for her children, and has minimal medical treatment. (*Id.*) With respect to her mental impairments, the ALJ found that Plaintiff's subjective complaints were somewhat credible. (*Id.*) However, he still found her symptoms to be mild to moderate. (*Id.*) He found that she is still able to maintain her household, take care of her children, attend meetings and go shopping, which was not the behavior of a person suffering from severe mental limitations. (*Id.*)

The court finds that the ALJ properly provided specific, clear and convincing reasons supported by substantial evidence for making an adverse credibility determination. The ALJ pointed to the medical record showing that Plaintiff's condition was stable. For instance, the ALJ relied on Plaintiff's own statements that she is able to maintain her household, take care of her children, attend meetings, and go shopping. In addition, with respect to Plaintiff's

14

physical impairments, the ALJ properly pointed out inconsistencies or contradictions between Plaintiff's subjective complaints and the objective medical evidence. While a claimant is not required to provide objective medical evidence affirmatively proving the severity of his or her symptoms, an ALJ may reject a claimant's statements about the severity of the symptoms if those statements are inconsistent with or contradicted by objective medical evidence. *Bunnell*, 947 F.2d at 343; *see also Johnson v. Shalala*, 60 F.3d 1428, 1434 (9th Cir. 1995). Here, while Plaintiff complained of pain and shortness of breath, she never sought treatment from a rheumatologist, orthopedist, or pulmonologist. Nor did she seek treatment from a physical therapist.

Moreover, an ALJ may rely on a consulting examiner's opinion, which standing alone constitutes substantial evidence, because it rests on the examiner's own independent examination of the claimant. *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001). Here, the ALJ relied on Dr. Gerson's finding that Plaintiff was capable of performing light work. (Tr. 17.) He also relied on Dr. Doornick's finding that Plaintiff's mental condition limits her to unskilled work. (*Id.*) He found this to be consistent with the findings of Dr. Rasul, one of Plaintiff's treating health care providers. (*Id.*)

Finally, the ALJ concluded that Plaintiff's daily activities were somewhat inconsistent with her allegations. "[I]f the claimant engages in numerous daily activities involving skills that could be transferred to the workplace, an adjudicator may discredit the claimant's allegations upon making specific findings relating to the claimant's daily activities." *Bunnell*, 947 F.2d at 346. Here, the ALJ pointed out that Plaintiff is able to maintain her household, take care of her children, attend meetings, and go shopping, and determined this is not the behavior of a person suffering from severe mental limitations. (Tr. 17.)

In sum, the ALJ properly supported and adequately explained his adverse credibility determination. Collectively, the reasons provide a sufficient basis for discrediting Plaintiff's testimony. *See Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008)(upholding adverse credibility determination where the "ALJ provided several permissible reasons").

### E. STEP 3 ANALYSIS

Plaintiff argues that the ALJ's step 3 analysis is flawed because the ALJ analyzed only Plaintiff's mental impairments, and failed to mention Plaintiff's hepatitis C, asthma, fibromyalgia, and thyroid problems at step 3. (Doc. # 10 12-13.) Defendant asserts that Plaintiff fails to show which listing she meets or equals, and does not set forth evidence supporting the diagnosis and findings of a Listed Impairment. (Doc. # 13 14-15.)

At step 3, the ALJ determines whether a plaintiff's impairment is equivalent to one of the Listed Impairments set forth at 20 C.F.R. pt. 404, subpt. P, app. 1. It is presumed that the Listed Impairments are severe enough to preclude any gainful activity. 20 C.F.R. § 416.925(a). If the claimant's impairment meets or equals a Listed Impairment, and is of sufficient duration, the claimant is conclusively presumed disabled. 20 C.F.R. §§ 404.1520(d), 416.920(d). If the claimant's impairment is severe, but does not meet or equal one of the Listed Impairments, the ALJ proceeds to step four. *Yuckert*, 482 U.S. at 141.

Both parties rely on *Marcia v. Sullivan*, 900 F.2d 172 (9th Cir. 1990). There, the Ninth Circuit affirmed the ALJ's determination that Plaintiff's chronic liver disease did not meet the listing. *Marcia*, 900 F.2d at 175 (noting that the medical evidence did not demonstrate a diagnosis consistent with the findings of the listing). The Ninth Circuit also looked at whether Marcia's medical evidence equaled a Listed Impairment. *Id.* at 175-176. The court found that the ALJ's statement "that Marcia did not equal the listing was insufficient." *Marcia*, 900 F.2d at 176.

To find medical equivalence based on a combination of impairments, the Ninth Circuit has ruled that the plaintiff must either offer "a theory, plausible or otherwise, as to how [the plaintiff's multiple impairments] combined to equal a listing impairment" or point to "evidence" that shows that this combined impairments equal a listed impairment. *Burch v. Barnhart*, 400 F.3d 676, 683 (9th Cir. 2006); *Lewis v. Apfel*, 236 F.3d 503, 514 (9th Cir. 2000).

Here, the ALJ determined that Plaintiff's mental impairments, considered singly, and in combination, do not meet or equal the criteria of listings 12.04, 12.06, and 12.09, taking into consideration whether the "paragraph B" criteria are satisfied. (Tr. 12.) The ALJ found that Plaintiff has mild restriction in activities of daily living (*id.*, Ex. 4E, 10F), mild difficulties in social functioning (*id.* at 13, Ex. 2E, 4E, 2F, 10F), and moderate difficulty with concentration, persistence or pace (*id.* at 13). The ALJ pointed to Dr. Lewis's finding that Plaintiff had difficulties performing serial 7's and serial 3's, but noted she was capable of understanding, remembering, and carrying instructions. (*Id.*) He also noted that Plaintiff enjoys reading and watching television. (*Id.*, Ex. 4E, 2F.) The ALJ determined that Plaintiff did not satisfy the "paragraph B" or "paragraph C" criteria. (*Id.* at 13.) He found that Plaintiff did not require a highly structured and supportive environment for adequate functioning. (*Id.*) She did not have repeated extended episodes of decompensation, and minimal change in her environment would not result in deterioration in her condition. (*Id.*)

Here, Plaintiff has not advanced any theory or argument explaining how her physical impairments, or any combination thereof, equal a listed impairment. Nor does Plaintiff point to evidence in support of her argument. To the extent Plaintiff is arguing that her asthma alone equals a listing, she points to no medical evidence showing that her impairment is at least equal in severity and duration to the conditions listed for this impairment.

In sum, the claimant in *Marcia* presented medical evidence to establish that the impairments were equivalent to a Listed Impairment. *Marcia*, 900 F.2d at 176 (citing SSR 83-19 for the rule that "equivalency can be established when a listed impairment for which the medical findings are missing from the evidence but for which other medical findings of equal or greater significance and relating [to] the same impairment are present in the evidence"). Here, in contrast to *Marcia*, the ALJ provided a detailed review of the medical evidence in the record, which the court finds to be an adequate explanation of his evaluation of alternative tests and the combined effects of the impairments. (Tr. 15-17.) The court rejects Plaintiff's assertion that the decision should be remanded or reversed on this basis.

17

## IV.  CONCLUSION

After carefully reviewing the record as a whole, the district court should find there is substantial evidence to support the ALJ's determination.

## V.  RECOMMENDATION

**IT IS HEREBY RECOMMENDED** that Plaintiff's Motion for Remand (Doc. #10) be **DENIED.**

**IT IS FURTHER RECOMMENDED** that Defendant's Cross-Motion for Summary Judgment (Doc. #13-14) be **GRANTED** and that the decision of the ALJ be **AFFIRMED**.

DATED:   February 28, 2011.

_____
UNITED STATES MAGISTRATE JUDGE